# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2021

Lyle W. Cayce
Clerk

No. 19-30921

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DAVID RAY JOHNSON; LAKENDRIA NICOLE GOINGS,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:18-CR-148

Before DENNIS, HIGGINSON, and WILLETT, *Circuit Judges*.
JAMES L. DENNIS, *Circuit Judge*:

David Ray Johnson and Lakendria Nicole Goings were charged with the armed robbery of two banks and one credit union and with related firearms offenses. After a four-day jury trial, they were found guilty on all counts. Johnson was sentenced to 498 months and Goings to 339 months. On appeal, Johnson challenges the sufficiency of the evidence supporting his conviction for brandishing a firearm during the armed robbery of the credit union, as well as the sufficiency of the evidence supporting his two convictions for being a felon in possession of a firearm. He also challenges the district court's application of a sentencing enhancement. Goings

challenges the sufficiency of the evidence supporting her convictions for armed robbery of the credit union and for brandishing a firearm during that robbery, and also argues that the district court's answer to a jury note violated her due process rights. For the following reasons, we reject all five challenges and AFFIRM both Johnson's and Goings's convictions and sentences.

## I. Factual and procedural background

On November 10, 2017, Johnson and Goings robbed the Guaranty Bank & Trust in Epps, Louisiana.[1] The sole teller on duty buzzed Goings into the small bank lobby while waiting on another customer. Goings pointed a gun at the clerk, gave her a bag and ordered her to fill it with money, and told her to buzz Johnson, who also had a gun, into the bank. The pair fled with $17,307. Police recovered a cotton glove and a handgun along their escape route, and Johnson's DNA was later found on the glove. The robbery was captured on security camera footage and audio was picked up on the bank's ATM machine.

On November 27, 2017, the pair robbed the Barksdale Federal Credit Union (FCU) in Cotton Valley, Louisiana. This robbery was also captured on security camera footage. Goings, unarmed, entered the credit union first, went to the teller window with a bag, and yelled at teller Dodie Carter to fill the bag. Johnson, armed with a handgun, tried to enter supervisor Sharon Hedrick's office, but Hedrick had closed and locked her door after hearing shouting in the lobby. Johnson then went toward the teller station and pointed his gun at Carter. After Carter emptied her cash drawer, Goings told her to move to the adjacent teller window to empty a second cash drawer.

---

[1] Because this is an appeal from a jury verdict, we recount the facts in the light most favorable to the conviction. *See United States v. Oti*, 872 F.3d 678, 684 n.1 (5th Cir. 2017).

Johnson and Goings fled with $12,756. Coin rolls with account numbers and customer names from the credit union were later found in Goings's SUV.

On December 18, 2017, the pair robbed the Winnsboro Bank in Gilbert, Louisiana. Goings was armed with a handgun and Johnson with a rifle. They fled in Goings's Toyota SUV with $28,447. Corporal Daniel Raley of the Franklin Parish Sheriff's Office was alerted of the robbery by radio, saw the SUV driving erratically, and gave chase. During the chase, Johnson aimed, but did not fire, an AR-15 assault rifle at Raley out of the driver side window of the SUV. Johnson then pulled the rifle back into the SUV and fired a handgun at Raley out of the same window, but did not hit him. The Toyota eventually crashed, and Johnson emerged from the driver side armed with a handgun that became stuck in the door frame and fell on the ground. Goings was in the passenger seat.

In June 2019, Johnson and Goings were each charged in a nine-count superseding indictment. Both were charged with three counts of armed robbery in violation of 18 U.S.C. § 2113(a), (d) & § 2 and three counts of using, brandishing, or discharging a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (iii) & § 2. Johnson was also charged with two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Johnson and Goings were also charged with one count of firearm conspiracy in violation of 18 U.S.C. § 924(c), (o); this count was quashed prior to trial.

At trial, both Carter and Hedrick—the Barksdale FCU employees— testified they did not see Johnson with a gun during the robbery, and that they only realized Johnson had a gun upon viewing security camera footage after the incident. Carter, the teller, testified that she was so focused on Goings that she did not see Johnson at all. Security camera footage taken from a vantage point behind the teller windows appeared to show the following:

When Johnson abruptly entered the line of vision of the teller window and pointed his gun at Carter, she took a quick step or two backwards and raised her hands briefly, before she rushed over to the adjacent teller window where Goings had moved with the bag in order to get Carter to empty the second cash drawer. The Government introduced this video at trial and also introduced as an exhibit a "freeze frame" capturing Carter with her hands raised and Johnson pointing a gun at her. There is no sound on this video.

At trial, the Government also introduced the following documents relevant to Johnson's prior criminal history: (1) a North Carolina state court criminal judgment showing that Johnson pleaded guilty in 2012 to three counts of felony financial card theft and was sentenced to a suspended term of imprisonment ranging from 6 to 17 months; (2) additional state court documents that indicated in 2013 he violated the terms of his supervised probation, his probation was revoked, and he was ordered to serve his sentence; and (3) North Carolina state probation paperwork, which included an acknowledgement form, signed by Johnson, stating that he was not allowed to possess a firearm under state law because he was a convicted felon.

Both defendants moved for judgment of acquittal on all counts at the close of the Government's case and again at the close of evidence. The motions were denied.

During deliberations, the jury sent the district court a note that read:

> - We would like to see Epps ATM audio of Going's [sic] voice during robbery.
>
> - Also we would like to see Johnson's cellphone video where he is bragging and talking about not getting caught & going to jail. Going's [sic] voice is in this video.

> - Also need to see body cam video at the end when
> Going's [sic] mentions calling to get a ride for her kids.

These audio and video clips previously had been played for the jury without objection.

Because of technology constraints, the jury had to be brought into the courtroom to review the requested exhibits. Out of the presence of the jury, Goings objected to the second item on the list, asserting that no one had identified her as the speaker. The court responded that it planned to grant the jury's request. Goings's counsel replied, "I'm just afraid that . . . if we play it without some caveat, it's almost endorsing their statement that it is her voice." The court overruled the objection, reiterating that it would play the exhibit and let the jury decide if the voice belonged to Goings. Goings also objected to playing the first item, on the grounds that "it appears that the jury is wanting to conduct its own testing by comparing voices" between that item and the other two. That objection was also overruled. After the jury returned to the courtroom, the district court informed the jurors that "[w]e're going to play for you the information you requested." The exhibits were then played for the jury.

The jury convicted both Johnson and Goings on all counts. Johnson's Presentence Report (PSR) recommend a six-level increase to his base offense level for the Winnsboro/Gilbert armed robbery under United States Sentencing Guideline (U.S.S.G.) § 3A1.2(c)(1) for assaulting a police officer because he fired a handgun at Corporal Raley's car while fleeing. Johnson objected that (1) he did not shoot at the police and (2) the same conduct was used to apply a two-level reckless flight enhancement under § 3C1.2. The objections were overruled and both adjustments were applied.

The district court sentenced Johnson to 498 months total imprisonment: 210 months for each of the three armed robbery convictions,

to run concurrently, and 120 months for each of the two felon-in-possession convictions, also to run concurrently with the armed robbery sentences, followed by an 84-month consecutive sentence for brandishing during the first robbery, an 84-month consecutive sentence for brandishing during the second robbery, and a 120-month consecutive sentence for discharging a firearm during the third robbery. The district court sentenced Goings to 339 months total imprisonment: 87 months for each of the three armed robbery convictions, to run concurrently, followed by three consecutive terms of 84 months for each of her three brandishing convictions.

## II.  Legal standards

Because Johnson and Goings preserved their sufficiency of the evidence claims by moving for a judgment of acquittal at the close of the Government's case and at the close of the evidence, our review is *de novo*. *See* FED. R. CRIM. P. 29(a); *United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007).  We review the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. *United States v. Rose*, 587 F.3d 695, 702 (5th Cir. 2009).  We will uphold the jury's verdict if a rational trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Jury instructions, including responses to jury questions, are reviewed for abuse of discretion, subject to harmless error review.  *United States v. Ramos-Cardenas*, 524 F.3d 600, 610 (5th Cir. 2008).

We normally review the district court's interpretation and application of the Sentencing Guidelines *de novo* when considering the procedural reasonableness of a sentence. *United States v. Lord*, 915 F.3d 1009, 1017 (5th Cir. 2019).  However, Johnson concedes his challenge should be reviewed for plain error because he did not object in the district court on the same grounds

he now raises on appeal.  Therefore, Johnson must show an error that is clear or obvious and that affects his substantial rights.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).  If he does, our court has the discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *See id.*

### III.  Discussion

Johnson raises three issues on appeal and Goings raises two issues. We consider each in turn.

### A.

First, Johnson raises a sufficiency-of-the-evidence challenge to his brandishing conviction; he concedes that he openly carried a firearm, but claims that he did not "brandish" it.  Johnson asserts that to prove brandishing, the Government needed to prove that another person was actually aware that he had a gun.  He claims the Government did not carry that burden as to his conviction for brandishing during the Barksdale FCU robbery.  Despite the video evidence, which shows him pointing a gun directly at Carter, Johnson emphasizes that both Carter and Hedrick testified they did not know he had a gun until they viewed the security footage after the robbery.

According to the statute, "any person who, during and in relation to any crime of violence [,which includes credit union robbery,] . . . uses or carries a firearm" shall be imprisoned for a mandatory minimum term of five years.  18 U.S.C. § 924(c)(1)(A)(i).  If the firearm is "brandished," the term is increased to seven years.  *Id.* § 924(c)(1)(A)(ii).  "'[B]randish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that

person." *Id.* § 924(c)(4).  The jury charge incorporated this statutory definition.

Johnson argues that the word "display" implies an audience, and further, that "display" must be read in the context of the statute as modified or limited by the clause that follows as merely one means to "otherwise make the presence of the firearm known to another person," with an emphasis on "known."    The Government argues that the statutory definition of brandishing only requires proof of the defendant's acts and intent and does not require proof of another person's knowledge or awareness of the firearm. It is sufficient under the Government's definition that Johnson displayed the firearm with an intent to intimidate, regardless of whether another person actually saw the gun.

To our knowledge, our court has not directly addressed the issue presented by this case, nor has it been urged to parse the statutory definition of brandishing in the precise manner urged by Johnson.    In our most analogous case, *United States v. Gonzales*, 841 F.3d 339 (5th Cir. 2016), one of the defendants made an argument similar to Johnson's proposed interpretation.    In that case, the defendant conceded that he openly carried a firearm, but argued that he did not brandish it because there was "no evidence that [the *victim* of the assault] ever saw the gun."    *Id.* at 354 (emphasis added).    The court in *Gonzales* affirmed the brandishing conviction, stating that "if the jury believed that [the defendant] was the man carrying the machine gun in the alley, it could have reasonably found that this amounted to displaying it in a threatening manner."  *Id.*

The Government argues that *Gonzales* supports its interpretation because the court focused on the defendant's actions.  Johnson argues that *Gonzales* supports his argument, because the court noted that there was a witness at trial who "testified that he considered trying to break up the

assault but changed his mind because, after seeing the man with the gun, he feared for his and his wife's safety." *Id.* However, *Gonzales* did not explicitly hold, as Johnson urges, that the Government needed to prove that another person—in that case, the witness—had knowledge of the presence of the firearm in order to establish that the defendant brandished the firearm. Rather, in *Gonzales* the import of the witness was arguably his identification of the defendant as the person with the firearm, more so than the fact that he saw the gun and was intimidated by its display. *See id.*

We do not find it necessary to definitively resolve the novel questions raised by Johnson's argument, because, on these facts, we find that a rational jury could have concluded from the evidence that all the elements of the offense were proved beyond a reasonable doubt even under the more-restrictive interpretation of the statute that Johnson proffers. While Carter testified at trial that her attention during the robbery was focused solely on Goings and that she did not see Johnson at all, the jury could have inferred from the surveillance video that Carter did in fact have momentary awareness of Johnson and his firearm. Specifically, in the surveillance video it appears that Carter reacts, by taking steps backwards and raising her hands over her head, at the exact moment that Johnson appears before her teller window with his arm outstretched and his firearm pointed directly at her. Viewing all evidence and inferences in the light most favorable to the verdict, we conclude that the Government introduced sufficient evidence from which the jury reasonably could have concluded beyond a reasonable doubt that Johnson brandished a firearm when he confronted Carter at her teller window. Accordingly, we affirm Johnson's brandishing conviction.

## B.

Next, Goings argues the evidence was insufficient to support the jury's verdict that she was guilty of armed robbery of the Barksdale FCU and

of brandishing a firearm during that robbery because (1) she did not personally carry a firearm during the Barksdale robbery, and (2) no witness saw Johnson with a gun. In essence, Goings concedes the evidence was sufficient to support a conviction for *simple* robbery but challenges her *armed* robbery conviction.

Goings's argument that she did not personally carry or use a firearm is of no moment because she and Johnson were both also charged with aiding and abetting each other's acts, and the jury was properly instructed on the aiding and abetting theory of liability.[2] The evidence at trial established that Johnson carried or used a gun during the robbery; on appeal Johnson concedes as much (he merely argues he did not brandish the gun). To prove armed robbery, there is no requirement that a gun be openly displayed or that any witness testify that he or she actually saw a gun or was aware of its presence; proof of the fact that a gun was carried or used is sufficient. *See United States v. Ruiz*, 986 F.2d 905, 909 (5th Cir. 1993); *United States v. Parker*, 542 F.2d 932, 934 (5th Cir. 1976). Because there was sufficient evidence from which a rational jury could find beyond a reasonable doubt that Goings joined and assisted Johnson in the armed robbery of the Barksdale FCU and his brandishing of a firearm during that robbery, Goings's sufficiency-of-the-evidence challenges fail, and we affirm her convictions.

---

[2] To establish aiding and abetting, the Government must demonstrate that a defendant "(1) associated with the criminal venture; (2) participated in the venture; and (3) sought by action to make the venture succeed." *United States v. Laury*, 49 F.3d 145, 151 (5th Cir. 1995). An aider and abettor is punishable as a principal, 18 U.S.C. § 2(a), and "is liable for criminal acts that are the natural or probable consequence of the crime that he counseled, commanded, or otherwise encouraged." *United States v. Vaden*, 912 F.2d 780, 783 (5th Cir. 1990)(internal quotation marks and citation omitted).

## C.

Next, Johnson raises sufficiency of the evidence challenges, which we review *de novo*, to his two convictions for being a felon in possession of a firearm. Title 18 U.S.C. § 922(g)(1) prohibits "any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. Johnson was convicted of two counts of being a felon-in-possession and was sentenced to 120 months on each, to run concurrently with his three armed robbery sentences. *See* 18 U.S.C. § 924(a)(2).

The three longstanding elements of being a felon in possession of a firearm in violation of § 922(g)(1) are: (1) that the defendant had a previous conviction punishable by a term of imprisonment exceeding one year; (2) that he knowingly possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. *See United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005). The Supreme Court, in *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019), recognized a fourth element: that the defendant knew he had the relevant status (i.e. that he had a prior conviction punishable by a term of imprisonment exceeding one year) when he possessed the firearm ("*Rehaif* knowledge"). On appeal, Johnson concedes that he knowingly possessed a firearm that traveled in interstate commerce, but argues that the Government failed to prove (1) that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, and (2) that he was aware of that fact, as required by *Rehaif*.

Whether a prior offense qualifies under § 922(g)(1) as a "crime punishable by imprisonment for a term exceeding one year" is determined by the law of the jurisdiction in which the crime was committed. *United States v. Daugherty*, 264 F.3d 513, 515 (5th Cir. 2001). Since December 2011, *all* felony crimes in North Carolina have been punishable by a term of

imprisonment exceeding one year, meaning that all North Carolina felonies qualify as § 922(g)(1) predicate crimes. *United States v. Barlow*, 811 F.3d 133, 137 (4th Cir. 2015) ("In accord with the amended statutory tables, the lowest possible maximum term of imprisonment for a felony conviction in North Carolina, regardless of offense class or prior record level, is thirteen months. . . . Thus, all North Carolina felonies now qualify as federal predicate felonies.") (citations omitted); *see also id.* at 140 ("In every case, North Carolina law now exposes felons to terms of imprisonment exceeding one year."). Johnson's felony financial card thefts occurred on March 25, 2012. Therefore, as a matter of law, they were punishable by a sentence exceeding one year and hence, qualify under § 922(g)(1). *See* N.C. GEN. STAT. §§ 14-113.9, 113.17(b) (classifying financial card theft as a felony).

Regarding the scienter element, since *Rehaif* was decided, our court has had limited opportunities to consider evidence that proves knowledge of felon status. *Rehaif* itself did not address the question, although the Supreme Court stated in dicta its "doubt that the obligation to prove a defendant's knowledge of his [felon] status will be as burdensome as the Government suggests," and cited language that "knowledge can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615, n.11 (1994)). In *United States v. Huntsberry*, our court stated that evidence about the nature of a prior conviction and the sentence imposed is "evidence that goes more directly to [a defendant's] knowledge of his felon status." 956 F.3d 270, 284 (5th Cir. 2020). In *Staggers v. United States,* the defendant stipulated that he was previously convicted of a felony, but not that he had knowledge of his status. 961 F.3d 745, 757 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 388 (2020). Our court affirmed his felon-in-possession conviction, concluding that "absent any evidence suggesting ignorance, a jury applying the beyond-a-reasonable-doubt standard could

infer that a defendant knew that he or she was a convicted felon from the mere existence of a felony conviction." *Id.*

At trial, the Government introduced a North Carolina criminal judgment showing that Johnson pleaded guilty to three counts of felony financial card theft and was sentenced to a suspended term of imprisonment of between 6 and 17 months, as well as state court documents showing that his probation was later revoked and that he was ordered to serve his original sentence. In addition, the Government introduced North Carolina state probation paperwork, signed by Johnson, which advised him that he could not possess a firearm under state law because he was a convicted felon.

Johnson argues that the criminal judgment, because it references a consolidated sentence for three felony counts but does not specify the maximum sentence for any single count, does not establish that he was convicted of a crime punishable by more than a year imprisonment or that he had the required *Rehaif* knowledge. Conceivably, he argues, he could have received three consecutive sentences, such that no single count carried a sentence exceeding 12 months. Johnson further argues that the state probation paperwork advising him that he could not possess a firearm under North Carolina state law because of his felony conviction did not prove *Rehaif* knowledge. Viewing the evidence in the light most favorable to the verdict, however, a rational jury could conclude that Johnson had been convicted of a crime punishable by more than one year of imprisonment and that he had knowledge of that fact as required by *Rehaif*. *See Staggers*, 961 F.3d at 757; *Huntsberry*, 956 F.3d at 285. Therefore, we affirm Johnson's felon-in-possession convictions.

## D.

Goings claims that the district court's response to the jury note violated her due process right to have the jury decide the ultimate issue of her

guilt.  Specifically, she argues that the district court's answer and lack of a limiting instruction tacitly confirmed to the jury that the voice on the Guaranty ATM audio was hers, and she asserts that, because the evidence did not conclusively link her to the Epps/Guaranty robbery, the district court's tacit confirmation effectively and impermissibly decided the issue of guilt for the jury.

"The district court enjoys wide latitude in deciding how to respond to questions from a jury."  *United States v. Cantu*, 185 F.3d 298, 305 (5th Cir. 1999).  When considering a supplemental jury instruction, a reviewing court considers whether "the [district] court's answer was reasonably responsive to the jury's questions and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it."  *United States v. Le*, 512 F.3d 128, 132 (5th Cir. 2007) (internal quotation marks and citation omitted).  Our court will reverse a conviction "[o]nly if the allegedly harmful instructions were either so overwhelmingly misleading as to be incurable, or were not effectively cured by statements elsewhere in the charge."  *United States v. Wilkinson*, 460 F.2d 725, 732 (5th Cir. 1972).  A jury instruction can violate due process if it interferes with the requirement that the Government prove every element of the offense.  *See Sandstrom v. Montana*, 442 U.S. 510, 520–21 (1979).  The challenged instruction must be viewed in context to determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks and citations omitted).

Goings argues that our review should be for abuse of discretion, while the Government contends that plain error is the appropriate standard because Goings did not raise the specific objection in the district court that she urges on appeal.  However, under either standard, Goings's argument fails because there was no error.  The district court's response—"[w]e're

going to play for you the information you requested"—was reasonably responsive to the jury's questions, and it was not misleading or prejudicial. The possibility that the district court's statement was understood by the jury as tacit confirmation that it was Goings's voice on the recording is remote. Throughout the proceedings, the district court made at least 15 statements to the jury concerning the jury's role as sole factfinder, including that the jury should disregard any comments on the facts made by the court. Viewed in context, there is not a reasonable likelihood that the district court's response influenced the jury.

## E.

Finally, Johnson challenges the district court's application of United States Sentencing Guideline (U.S.S.G.) § 3A1.2(c)(1), which calls for a six-level enhancement if a defendant assaults a law enforcement officer "in a manner creating a substantial risk of serious bodily injury" during the offense or while fleeing. The district court applied this enhancement to Johnson's base offense level for armed robbery of the Winnsboro Bank in Gilbert because he shot at Corporal Raley's car while fleeing. On appeal, Johnson argues the enhancement was improper because the Guidelines prohibit applying a weapons enhancement to an underlying offense if the defendant is also sentenced, based on the same conduct, for using a firearm under U.S.S.G. § 2K2.4. Johnson was sentenced under § 2B3.1 for armed robbery of the Winnsboro Bank and under § 2K2.4 for discharging a firearm in relation to that robbery. Because Johnson did not raise this specific objection below, he concedes that review is for plain error. Johnson cites no controlling precedent in support of his argument, but argues he can show plain error based on the language of the Guidelines and the "obvious and straightforward" nature of the error. We disagree and affirm the application of the enhancement.

"[D]ouble counting is prohibited only if the particular guidelines at issue specifically forbid it." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 316 (5th Cir. 2013) (internal citation omitted). The Guidelines instruct that when a defendant is sentenced both under § 2K2.4 for using, brandishing, or discharging a firearm in relation to a crime a violence, and sentenced under a different guideline for the underlying offense—here, under § 2B3.1 for armed robbery—the district court should "not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4, cmt. (4). The § 2K2.4 commentary further states that "[a] sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." *Id.*

Johnson argues that this language forbids the application of the § 3A1.2(c)(1) enhancement to his armed robbery offense. He acknowledges that the enhancement is an "adjustment" located in Chapter Three of the Guidelines and not a "specific offense characteristic," which are located in Chapter Two. Nevertheless, he contends that the commentary's statement that a § 2K2.4 sentence accounts for any "weapon enhancement" that would apply based on the defendant's "relevant conduct" as defined in § 1B1.3 means that application of Chapter Three adjustments are likewise prohibited by the commentary because both Chapter Two specific offense characteristics and Chapter Three adjustments are applied based on the defendant's § 1B1.3 "relevant conduct." In response, the Government emphasizes that the § 3A1.2(c)(1) adjustment is not a Chapter Two "specific

offense characteristic," as well as the absence of controlling circuit precedent in support of Johnson's argument. [3]

In this case, there was no error. There was no "double counting" because the two guideline provisions do not necessarily implicate the exact same conduct. *See Garcia-Gonzalez,* 714 F.3d at 315 ("[I]t was not error for the district court to impose both enhancements because . . . the enhancements do not necessarily implicate the same conduct."); *see also United States v. Thompson,* 515 F.3d 556, 563 (6th Cir. 2008) ("'[D]ouble counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."). Rather, each guideline provision accounted for a different aspect of Johnson's conduct: § 2K2.4 for discharging a firearm, and § 3A1.2(c)(1) for assaulting a law enforcement officer "in a manner creating a substantial risk of serious bodily injury" while fleeing. Therefore, because there was no plain error, we affirm the district court's application of the § 3A1.2(c)(1) enhancement.

## IV.

For the foregoing reasons, we reject all five arguments raised on appeal, and we AFFIRM both Johnson's and Goings's convictions and sentences.

---

[3] The Government also cites cases from other circuits—published and unpublished—approving of the application of both a § 2K2.4 sentence and a Chapter Three adjustment to the underlying offense in similar circumstances on the grounds that the Guidelines only explicitly prohibit application of § 2K2.4 and a Chapter Two "specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm." *See United States v. Dougherty,* 754 F.3d 1353, 1360 (11th Cir. 2014); *United States v. Thompson,* 515 F.3d 556, 563 (6th Cir. 2008); *United States v. Muhammad,* 512 F. App'x 154, 169 (3d Cir. 2013); *United States v. Roper,* 176 F. App'x 67, 69 (11th Cir. 2006).