# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2022

Lyle W. Cayce
Clerk

No. 21-40426

United States of America,

*Plaintiff—Appellee*,

*versus*

Gerardo Cordova-Lopez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:20-cr-845-1

Before Jones, Southwick, and Oldham, *Circuit Judges*.

Per Curiam:

Gerardo Cordova-Lopez pleaded guilty to unlawfully reentering the United States following removal. The district court sentenced him to 51 months in prison. On appeal, Cordova-Lopez argues that the district court miscalculated his advisory Guidelines range by deferring to the U.S. Sentencing Guidelines' commentary rather than applying the Guidelines themselves. We disagree and affirm.

No. 21-40426

I.

Gerardo Cordova-Lopez illegally entered the United States by crossing the Rio Grande River on November 19, 2020. He was apprehended by U.S. Customs and Border Protection agents the same day. The Government prosecuted him under 8 U.S.C. § 1326(b)(1), which prohibits illegally reentering the United States after being removed subsequent to a felony conviction. He pleaded guilty.

Cordova-Lopez's presentence report ("PSR") calculated a Guidelines range of 51–63 months. Cordova-Lopez objected to the PSR. He argued that the PSR's guidelines calculation had used certain prior convictions to both heighten his offense level, *see* U.S.S.G. § 2L1.2(b), and increase his criminal history score, *see id.* § 4A1.1. He conceded that the Guidelines' commentary—specifically, Application Note 3 to § 2L1.2— dictates this approach. But he argued that Application Note 3 prescribes "double-counting of one criminal conviction" in violation of the Guidelines themselves. He further argued that after *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), judicial deference to Application Note 3 was inappropriate.

The district court overruled Cordova-Lopez's objection and sentenced him to 51 months. Cordova-Lopez timely appealed. Because Cordova-Lopez preserved his objection, we review the district court's interpretation of the Guidelines *de novo*.[*] *See United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015) ("Where a defendant preserves error by

---

[*] We've repeatedly rejected this same argument on plain-error review. *See United States v. Cruz-Flores*, 799 F. App'x 245, 246 (5th Cir. 2020) (per curiam); *United States v. Vivar-Lopez*, 788 F. App'x 300, 301 (5th Cir. 2019) (per curiam). This is our court's first opportunity to consider this issue *de novo* after *Kisor*. Before *Kisor*, our court repeatedly rejected similar "double-counting" objections to the application of § 2L1.2. *See United States v. Duarte*, 569 F.3d 528, 529 & n.5 (5th Cir. 2009) (collecting cases).

objecting at sentencing, we review the sentencing court's factual findings for clear error and its interpretation or application of the Sentencing Guidelines de novo.").

## II.

Cordova-Lopez first argues that (A) after *Kisor*, courts should not defer to the Guidelines' commentary unless the Guidelines themselves are ambiguous. He then argues that (B) Application Note 3 to § 2L1.2 conflicts with the unambiguous Guidelines by requiring courts to "double-count" certain prior convictions when calculating the guidelines range. We discuss and reject each argument in turn.

## A.

Cordova-Lopez first argues that *Kisor* modified the deference owed to the Guidelines' commentary. This contention is the subject of a circuit split. The Third and Sixth Circuits agree with Cordova-Lopez that after *Kisor*, courts should not defer to the Guidelines' commentary absent some genuine ambiguity in the Guidelines. *United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021); *United States v. Nasir*, 982 F.3d 144, 158, 160 (3d Cir. 2020) (en banc), *vacated on other grounds*, 142 S. Ct. 56 (2021). The Fourth Circuit, however, has held that "*Kisor* . . . does not apply to the Sentencing Commission's official commentary in the Guidelines Manual," and courts should instead apply the more deferential approach articulated in *Stinson v. United States*, 508 U.S. 36 (1993). *United States v. Moses*, 23 F.4th 347, 356 (4th Cir. 2022); *accord Riccardi*, 989 F.3d at 490 (Nalbandian, J., concurring in part and in the judgment).

Our court has not yet taken a side in this circuit split. But we need not do so in this case. That's because, contrary to what Cordova-Lopez argues, Application Note 3 to § 2L1.2 is not in tension with the Guidelines. Rather,

Application Note 3 merely describes what the Guidelines' text and structure would unambiguously require even in its absence.

B.

Section 2L1.2 prescribes the Guidelines' offense level for illegal reentry offenses. Subsection (b) instructs courts to increase the offense level if the defendant committed the offense after sustaining a felony conviction (or three qualifying misdemeanors). The amount of the increase depends on the severity of the sentence imposed for the felony. *See* U.S.S.G. § 2L1.2(b).

Application Note 3 states that "[a] conviction taken into account under [subsection (b)] is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." Cordova-Lopez argues that Application Note 3 conflicts with the Guidelines because it instructs the court to "double-count" his prior felony convictions—that is, to use them to calculate both his offense level and criminal history category.

Cordova-Lopez's argument finds no support in our precedent or the Guidelines' text and structure. To begin with, Cordova cites no precedent supporting his argument that "double-counting" is *per se* incompatible with the Guidelines. To the contrary, we've repeatedly noted that "[d]ouble counting is prohibited only if the particular guidelines at issue specifically prohibit it." *United States v. Singletary*, 29 F.4th 313, 316 (5th Cir. 2022) (quoting *United States v. Johnson*, 990 F.3d 392, 403 (5th Cir. 2021)).

Nor do the Guidelines' text and structure support Cordova-Lopez's argument. Section 1B1.1 sets forth the basic method for calculating a defendant's Guidelines range. First, the court should determine the particular Guideline in Chapter 2 that's applicable to the offense of conviction. U.S.S.G. § 1B1.1(a)(1); *see also id.* § 2L1.2 (the Guideline for Cordova-Lopez's 8 U.S.C. § 1326 offense). The court should use that

Guideline to determine the base offense level and, if appropriate, adjust it based on "specific offense characteristics." *Id.* § 1B1.1(a)(2). (The court may then make several other adjustments not relevant here. *See id.* § 1B1.1(a)(3)–(5).)

Second, the court should use the directions in Chapter 4 to calculate the defendant's criminal history category. *Id.* § 1B1.1(a)(6). Once that's done, the court should use the tables in Chapter 5 to find the guidelines range that matches the defendant's offense level and criminal history category. *Id.* § 1B1.1(a)(7).

Section 1B1.1(a) thus dictates that the first step (offense level determination) and second step (criminal history category determination) involve distinct, independent calculations. And this is merely what Application Note 3 confirms in the particular context of illegal reentry offenses. Section 2L1.2(b) deals with the *offense level determination*: It prescribes a higher offense level for illegal reentry if the defendant illegally enters the country after sustaining certain, more-serious felony convictions. This accords with the text of 8 U.S.C. § 1326, which makes the crime of illegal reentry a more serious offense if the offender has a felony conviction. *See* 8 U.S.C. § 1326(b). But under the approach laid out in § 1B1.1(a), none of this affects the separate *criminal history category determination*—as Application Note 3 makes clear. *See* U.S.S.G. § 2L1.2 cmt. n.3.

The Guidelines' structure confirms what their text prescribes. The Guidelines were "built upon two factors: the category of offense behavior and offender characteristics." Thomas N. Whiteside, *The Reality of Federal Sentencing: Beyond the Criticism*, 91 Nw. U. L. Rev. 1574, 1585 (1997). Accordingly, Congress instructed the Sentencing Commission, in crafting the guidelines, to focus on two key things. *First*, Congress instructed the Commission to craft offense-by-offense guidelines considering, among other

things, "the grade of the offense," "the community view of the gravity of the offense," "the public concern generated by the offense," and "the deterrent effect a particular sentence may have on the commission of the offense by others." 28 U.S.C. § 994(c). *Second*, Congress separately instructed that the Guidelines should account for various offender characteristics, including "criminal history." *Id.* § 994(d)(10).

The Guidelines' approach to illegal reentry offenses accords with this structure. Section 2L1.2(b) recognizes that an illegal reentry offense is more grave, more threatening to the public, and in need of greater deterrence if the offender has a history of felonious conduct. Accordingly, illegal reentry subsequent to a felony conviction carries a higher offense level than mere illegal reentry. *Cf.* 8 U.S.C. § 1326. But that doesn't negate the role of criminal history in the Guidelines calculation. Whereas § 2L1.2(b) is meant to deter aliens with serious felonies from reentering the United States, Chapter 4's criminal history category determination responds to more general concerns about recidivism—for instance, the Sentencing Commission's sense that repeat offenders are more culpable and less amenable to rehabilitation. *See* U.S.S.G. ch. 4, pt. A, introductory cmt.

In sum, the Guidelines' application to Cordova-Lopez's illegal reentry offense is straightforward, regardless of the deference owed to the Guidelines' commentary. The district court properly calculated Cordova-Lopez's guidelines range, and his "double-counting" objection lacks merit.

*     *     *

The district court's judgment is AFFIRMED.