# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2022

Lyle W. Cayce
Clerk

No. 21-10651

United States of America,

*Plaintiff—Appellee*,

*versus*

John O. Green,

*Defendant—Appellant*,

consolidated with

No. 21-10672

United States of America,

*Plaintiff—Appellee*,

*versus*

Thomas D. Selgas,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CR-356

No. 21-10651
c/w No. 21-10672

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

Appellants Thomas Selgas ("Selgas") and John Green ("Green") were convicted by a jury of conspiracy to defraud the Internal Revenue Service ("IRS") by interfering with its lawful functions. *See* 18 U.S.C. § 371. Selgas was also convicted of evasion of payment of taxes. *See* 26 U.S.C. § 7201. On appeal, Selgas and Green both challenge the sufficiency of the evidence supporting their convictions and raise challenges to a number of jury instructions. Selgas also argues that his indictment was constructively amended, that he received ineffective assistance of counsel, and that the district court should have granted him a continuance. We AFFIRM.

**I.**

Selgas and his wife Michelle were partners in a company called MyMail, Ltd.[1] MyMail sued alleged patent infringers, which resulted in $11 million in settlement proceeds in 2005, of which MyMail received $6.8 million after attorney fees. In February 2006, MyMail's CPA filed tax forms reporting that Michelle Selgas received $1.559 million in ordinary business income and $1.091 million in distributions from MyMail, and Selgas received $117,187 in business income and a $82,000 distribution.

In late 2005, the Selgases had MyMail send $1 million by wire transfer to Dillon Gage, a precious metals dealer in Texas with whom Selgas had an account, and, as instructed by Selgas, Dillon Gage used the money to buy 7,090 quarter-ounce $10 Gold Eagle coins for Selgas. While the Gold Eagle coins have a nominal $10 face value, the actual value of the coins is much higher and is based on the price of gold.

---

[1] As we must, we present the facts in the light most favorable to the guilty verdict. *See United States v. Oti*, 872 F.3d 678, 685 n.1 (5th Cir. 2017).

No. 21-10651
c/w No. 21-10672

In April 2006, Selgas and Green—his lawyer—orchestrated an effort, along with MyMail partner Bob Derby, to amend MyMail's tax forms "based on the current laws of a constitutional $." According to Selgas and Green, "Federal Reserve Notes are valueless pieces of paper" and "lawful money" is instead measured by the "constitutional value" of a dollar, which is 371 ¼ grains of silver. The practical effect of employing this theory was to significantly underreport the amount of income that MyMail and the Selgases actually received. However, it is well-established that discounting the face value of money, i.e. Federal Reserve Notes, received as income based on the theory that the value of a dollar is tied to a specific weight of gold or silver "is not a legal method" of reducing taxes owed. *Mathes v. Comm'r of Internal Revenue*, 576 F.2d 70, 71 (5th Cir. 1978). "Congress has made the Federal Reserve note the measure of value in our monetary system . . . and has defined Federal Reserve notes as legal tender for taxes . . . . Taxpayers' attempt to devalue the Federal Reserve notes they received as income is, therefore, not lawful under the laws of the United States." *Id.* (internal citations and footnote omitted).

MyMail's CPA refused to amend the tax returns in line with Selgas and Green's so-called "constitutional dollar" or "lawful dollar" theory because the CPA thought it was "not a sustainable position before the IRS." Selgas and Green found another accountant to amend the forms. MyMail's amended tax form reported gross receipts for MyMail of $729,846 instead of $6.8 million; a distribution of $117,079 to Michelle Selgas instead of $1.091 million; and a distribution of $8,798 to Selgas instead of $82,000.

In 2006, Selgas filed a "Statement to the Internal Revenue Service," drafted by Green, for tax year 2005 instead of an income tax return. The Statement included an explanation of the "lawful dollar" theory; reported that the Selgases received $178,640 in "lawful dollars" but denied that this

No. 21-10651
c/w No. 21-10672

was "income"; and reported the Selgases' expenses in Federal Reserve Note dollars. By using the discredited "lawful dollar" theory, the Statement significantly understated the Selgases' actual income. Unlike a tax return, the Statement was not signed under penalty of perjury, although it purported to include a declaration pursuant to 28 U.S.C. § 1746, which provides a method for making unsworn declarations. At trial, an IRS witness testified that the 2005 Statement was not a valid tax return.

In due course, the IRS audited MyMail's 2005 taxes and disallowed the amended return that incorporated the "lawful dollar" theory. MyMail unsuccessfully challenged the adjustment in district court, and this court affirmed on appeal, stating that "courts have long held such arguments" as Selgas and Green's theory "are frivolous." *MyMail Ltd. v. Comm'r of I.R.S.*, 498 F. App'x 388 (5th Cir. 2012) (citing *Mathes*, 576 F.2d at 70–71; *Juilliard v. Greenman (The Legal Tender Cases)*, 110 U.S. 421, 448 (1884)).

Owing unpaid taxes for 1997–2002 and 2005, the Selgases engaged in a pattern of behavior that concealed their income and assets from IRS collection efforts.[2] For example, the Selgases did not keep money in bank accounts in their own names. Instead, from 2007 through at least 2017, the Selgases deposited more than $857,000 into Green's client trust accounts, and Green paid the Selgases' expenses and credit card bills out of his trust accounts. In 2008, the Selgases sold their home in Garland, Texas and

---

[2] Selgas and Michelle previously litigated their 1997–2002 tax liabilities in Tax Court and were represented by Green. The Tax Court ruled for the IRS. Selgas appealed the decision regarding his 2002 taxes to this court, which affirmed. *Selgas v. Comm'r of Internal Revenue*, 475 F.3d 697 (5th Cir. 2007). After the Tax Court ruled against them, Green referred the Selgases to an accountant to prepare belated tax returns for those years. The new returns not only showed no taxes due, but also requested refunds. The IRS initially processed the returns, but later adjusted them to conform with the Tax Court rulings that the Selgases had unpaid tax liability.

bought a new home in Athens, Texas, paying the $385,000 purchase price with 1,667 $10 Gold Eagle coins. Green represented the Selgases in both transactions. The buyer of the Garland home refused to pay in gold coins, so Selgas and Green had the title company send the buyer's payment directly to Dillon Gage to be converted into gold coin. They also attempted to get the Athens house assessed for property taxes purposes based on the purported "constitutional lawful money" dollar price of $16,670 instead of the actual purchase price. In 2012, Selgas sold the Athens house for $8,400 "lawful money" to a trust controlled by a family member.

In May 2014, IRS Revenue Officer Jonathan Daniel was assigned to collect the Selgases' tax deficiencies. After running into difficulty contacting the Selgases, Daniel contacted Green at the post office box listed on the Selgases' IRS power of attorney form. Neither Selgas nor Green responded to multiple letters Daniel sent. In January 2015, Daniel found retirement accounts for the Selgases funded with gold coins, but Selgas withdrew the coins from the accounts before Daniel could seize them. Daniel contacted Green again in July 2015 to request financial information. This time, Green responded that the Selgases had already paid their taxes and requested additional information from Daniel, but otherwise did not respond to Daniel's requests. Daniel eventually located the Athens residence (an initial search of property records was unsuccessful because the title had been transferred to the trust), and he contacted Selgas and Green to advise them that it would be seized. Daniel did not learn that the Selgases putt money in Green's trust accounts, and he was ultimately never able to collect any money to satisfy the Selgases' tax debt.

In July 2018, a grand jury charged Selgas and Green with conspiracy to defraud the United States by impeding and obstructing the IRS in violation of 18 U.S.C. § 371 (Count One). Selgas was also charged with income tax

evasion for years 1998–2002 and 2005, in violation of 26 U.S.C. § 7201 (Count Two).[3]  At the final pre-trial conference on January 6, 2020—the day before jury selection was set to begin—Selgas made an oral motion to substitute counsel Charles McFarland for counsel Franklyn Mickelsen and sought a six-to-eight-week continuance so that McFarland could prepare for trial. The district court denied the motion for continuance, but allowed McFarland to act as lead counsel with Mickelsen assisting.  After an eight-day jury trial, Selgas and Green were found guilty as charged.

## II.

Because Selgas and Green preserved their sufficiency-of-the-evidence challenges by moving for a judgment of acquittal, our review is *de novo*. FED. R. CRIM. P. 29(a); *United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007). This court will uphold the jury's verdict if a rational trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. *Id.* In doing so, we do not reweigh the evidence or assess the credibility of witnesses, as this is the responsibility of the jury. *Id.*

Constructive amendment claims are typically reviewed *de novo*, *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012), and challenges to jury instructions are reviewed for abuse of discretion and are subject to harmless error review, *United States v. Johnson*, 990 F.3d 392, 398 (5th Cir. 2021).  However, objections not raised before the trial court are reviewed for

---

[3] Michelle Selgas was also charged in Count One with conspiracy and in Count Three with income tax evasion.  The district court granted a judgment of acquittal to Michelle prior to submission of the case to the jury.

6

plain error. *Puckett v. United States*, 556 U.S. 129, 134–35 (2009). If (1) there is an "error," (2) that is "clear or obvious," and (3) that error "affected the appellant's substantial rights," then (4) we have discretion to remedy the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 135.

"Denial of a continuance is within the discretion of the trial judge and will not be reversed absent a clear abuse of discretion." *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980) (citation omitted).

### III.

Selgas and Green raise six issues on appeal. Both Selgas and Green claim that the evidence was insufficient to support their conspiracy-to-defraud convictions and challenge the district court's failure to give certain jury instructions. Selgas also claims that the evidence was insufficient to sustain his tax evasion conviction; challenges the district court's denial of his request for a continuance; claims that the district court constructively amended the indictment's tax evasion count; and claims that he received ineffective assistance of counsel. We consider each issue in turn and reject them all.

### A.

First, Selgas asserts that the district court erred by denying his eve-of-trial request for a continuance. Selgas claims that the lack of a continuance prevented his new co-counsel from preparing for trial, and thus effectively denied him the right to counsel of his choice. We disagree.

"Generally, a district court's refusal to continue a case to accommodate an attorney brought in at the last minute is not an abuse of discretion." *United States v. Pollani*, 146 F.3d 269, 272 (5th Cir. 1998) (citations omitted). When deciding motions to substitute counsel, "trial

courts have 'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.'" *United States v. Neba*, 901 F.3d 260, 265 (5th Cir. 2018) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006)). Considerations of fairness include "(1) whether a continuance would be required; (2) whether the party's concerns were based on anything of a factual nature; (3) whether the party requested substitution of counsel late in the case; and (4) whether a continuance could compromise the availability of key witnesses." *Id.* (internal quotation marks and citations omitted).

Selgas moved to substitute counsel and sought a six-to-eight-week continuance on the day before trial. The district court denied the motion for a continuance, but permitted substitute counsel McFarland to represent Selgas and act as lead counsel, with Mickelsen assisting. The district court explained that it was "balancing the right of counsel of choice against the needs of fairness and the demands of the Court's calendar." It noted that other parties in the case opposed the continuance, that the parties had already subpoenaed witnesses who might not be available post-continuance, that other civil and criminal matters were pending on the court's docket, that the substitution of counsel was based on "a strategy issue" and not a factual matter, and that Selgas requested the substitution and continuance late in the case, on the day before trial. This was a reasonable balancing of the competing interests identified in *Neba*. The district court's denial of Selgas's last-minute continuance request was not an abuse of discretion, and Selgas was not denied the counsel of his choice.

**B.**

Next, Selgas argues that the district court's jury instruction on the elements of income tax evasion under 26 U.S.C. § 7201 constructively amended the indictment. Although Selgas asserted in his opening brief that

our review is *de novo*, our review is for plain error because Selgas did not object to the jury instructions in the district court until his Rule 33 motion for a new trial and thus did not preserve the issue for appeal. *See United States v. Chaker*, 820 F.3d 204, 213 (5th Cir. 2016) (reviewing unpreserved claim for plain error); *United States v. Gevorgyan*, 886 F.3d 450, 457 (5th Cir. 2018) (reviewing issue first raised in new trial motion for plain error).

Because Selgas failed to meaningfully address all four prongs of plain-error review either in his opening brief or in reply, his constructive amendment challenge fails. Even if we were to find an error that was clear or obvious, Selgas has not shown that any error affected his substantial rights or that we should exercise our discretion to correct any such error. *See United States v. Broussard*, 669 F.3d 537, 553 (5th Cir. 2012) ("To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings."); *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) ("Additionally, we do not view the fourth prong as automatic if the other three prongs are met."); *United States v. Phillips*, 477 F.3d 215, 221–23 (5th Cir. 2007) (rejecting constructive amendment challenge on plain-error review for failure to show effect on substantial rights).

## C.

Next, Selgas and Green challenge the sufficiency of the evidence supporting their conspiracy-to-defraud convictions. To convict a defendant of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, the Government is required to prove beyond a reasonable doubt: "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy."

*United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001) (citation omitted). Appellants claim that the Government failed to prove all three elements, but their argument is largely premised on an unfounded theory about what it means to interfere with the lawful government functions of the IRS.

Section 371 criminalizes two types of conspiracies against the United States, making it a felony "*either* to commit any [substantive] offense against the United States, *or* to defraud the United States[.]" 18 U.S.C. § 371 (emphasis added). "To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924). The unlawful objective of Selgas and Green's conspiracy was to defraud the United States "by impeding, impairing, obstructing or defeating the lawful function of the Internal Revenue Service in the ascertainment, computation, assessment, or collection of income taxes."

Selgas and Green raise essentially identical arguments, relying on language in *Hammerschmidt* and *United States v. Haga*, 821 F.2d 1036 (5th Cir. 1987). In *Hammerschmidt,* the Court stated that "a mere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it" does not fall within the scope of the statute. 265 U.S. at 188. Similarly, in *Haga*, our court stated that a conspiracy to defraud "requires a showing of more than completely external interference with the working of a governmental program or disregard for federal laws," and that "the essence of the conspiracy must at least involve a showing of more than inadvertent contact with a governmental agency or incidental infringement of government regulations." 821 F.2d at 1041.

Both Selgas and Green claim that they did not interfere with the IRS's lawful functions because the Government did not prove that the IRS followed administrative procedures concerning the assessment and collection of taxes—in other words, that the IRS's tax assessment and tax collection effort as to Selgas were not "lawful." Specifically, they claim that Selgas paid his taxes for tax years 1998–2002 and that he had no tax deficiency for 2005 because the IRS had not followed certain administrative and statutory procedures, and therefore they did not interfere with the IRS's lawful functions. Green also seems to argue that the IRS acted outside of its delegated authority altogether.

Appellants' arguments lack merit. First, to the extent that appellants appear to argue at times that the Government had to prove that a lawful government function was *actually* interfered with or obstructed, such an argument is contrary to black-letter law that "[t]he central feature of a conspiracy is the agreement," not whether the object of the agreement was achieved. *United States v. Sanders*, 952 F.3d 263, 274 (5th Cir. 2020); *see Unites States v. Booty*, 621 F.2d 1291, 1297 (5th Cir. 1980) ("Possibility of success is not a requisite element of a criminal conspiracy under 18 U.S.C. § 371").

More importantly, however, appellants' suggestion that the object of the conspiracy was nothing more than "mere external interference" with the IRS is belied by evidence that the object was to actually interfere. Viewed in the light most favorable to the verdict, the evidence at trial showed that Selgas and Green conspired to, *inter alia*, amend MyMail's tax return in order to misrepresent and underreport its income; submit Statements that similarly misrepresented and underreported Selgas's income; and conceal Selgas's money and assets from IRS collection efforts through the use of Green's trust accounts and by transferring Selgas's house to a trust

controlled by a relative. In other words, Selgas and Green did not merely advocate for their tax theories or protest the IRS's policies and efforts, but instead conspired to put their theories into practice with the goal of directly impacting the IRS's "ascertainment, computation, assessment, or collection of income taxes."[4]

Contrary to Selgas and Green's arguments, the IRS's compliance with its own administrative procedures is not relevant to whether the "object" or "essence" of the defendants' conspiracy was to interfere with its lawful functions; proof of an administratively-determined tax deficiency is not an element of the offense; and the Government does not need to specify or prove in a minutely-detailed fashion that interference with a particular statute or procedure was the goal of the conspiracy, but can instead define the object of interference at a higher level of generality. *See United States v. Clark*, 139 F.3d 485, 489 (5th Cir. 1998) (defining "lawful function of the IRS" as "collecting taxes").

Reviewing the evidence in the light most favorable to the verdict, a rational juror could have found that the elements of § 371 were established beyond a reasonable doubt. The existence of an agreement, as well as a

---

[4] Any reliance on *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979), is unavailing, as the case is clearly distinguishable. *Porter* concerned an alleged scheme to defraud Medicare. *Id.* at 1050-52. This court reversed defendants' conspiracy-to-defraud convictions because their scheme interfered with no laws or regulations whatsoever: the Government alleged that the doctors involved in the scheme were prohibited from receiving certain fees, but, when pressed by the court, could identify no law or regulations that in fact prohibited such a fee arrangement. *Id.* at 1057. Instead of interfering with a lawful government function, the Government claimed vaguely that "it was defrauded of its right to have the Medicare program conducted honestly and fairly." *Id.* at 1056. Here, by contrast, the Government alleged that Selgas and Green conspired to interfere with "the ascertainment, computation, assessment, or collection of income taxes," which are clearly lawful government functions.

defendant's knowledge of its objective and intent to join, can be established by circumstantial evidence alone. *Sanders*, 952 F.3d at 273; *United States v. Schmick*, 904 F.2d 936, 941 (5th Cir. 1990). "For the evidence to sustain the conviction, it is not necessary that the evidence show an express or formal agreement; evidence of 'a tacit understanding is sufficient.'" *United States v. Aubin*, 87 F.3d 141, 145 (5th Cir. 1996) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975)). "The actions and the surrounding circumstances must be incriminating enough to warrant a finding that the Government proved the existence of an agreement beyond a reasonable doubt." *United States v. Ganji*, 880 F.3d 760, 768 (5th Cir. 2018) .

The evidence at trial showed that Green represented Selgas before the Tax Court such that both men knew that the Tax Court had ruled that Selgas had unpaid tax liability; Green testified that he knew about Selgas's "extensive battle with the IRS" from the outset of their relationship and that Selgas introduced him to the "lawful dollar" theory; Green helped Selgas prepare and file the Statements that underreported his income using the unsupportable "lawful dollar" theory; the two worked together to convince MyMail to amend its Form 1065 in line with their theory; both knowing that Selgas owed taxes, Selgas put his money into Green's trust accounts instead of using bank accounts in his own name; and Green paid Selgas's living expenses out of the trust accounts. From this evidence, a rational jury could have found beyond a reasonable doubt that Selgas and Green had an agreement to defraud the IRS and that each had knowledge of the conspiracy's object as well as intent to join in it.

"An overt act is an act performed to effect the object of a conspiracy . . . . Though the act need not be of a criminal nature, it must be done in furtherance of the object of the conspiracy." *United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995). The evidence of overt acts at trial was

voluminous, and included, *inter alia*, bank records documenting dozens of deposits and withdrawals of Selgas's money into and out of Green's accounts; emails between Selgas, Green, and MyMail partners about amending the Form 1065; Statements prepared by Green that misreported Selgas's income based on the discredited "lawful dollar" theory; and evidence of Green's efforts to frustrate IRS Agent Daniel's attempts to collect Selgas's outstanding tax liabilities. From this evidence a rational jury could find that an overt act was performed in furtherance of the object of the conspiracy.

## D.

Next, Selgas challenges the sufficiency of the evidence supporting his conviction for tax evasion. Title 26 U.S.C. § 7201 penalizes "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof." "The elements of tax evasion are: (1) willfulness; (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Bolton*, 908 F.3d 75, 89 (5th Cir. 2018) (cleaned up). Selgas claims that the Government failed to prove any of the three elements. We disagree.

Selgas mainly focuses on the tax deficiency element, which is also referred to in the caselaw as a "tax due and owing." *See United States v. Schafer*, 580 F.2d 774, 777 (5th Cir. 1978). Selgas argues first that he in fact owed no taxes for 1998-2002, and that the jury was convinced otherwise "[t]hrough the use of false information/evidence." Selgas in effect urges this court to reweigh the evidence, which we will not do, as it is contrary to the standard of review. *Jackson*, 443 U.S. at 319. Instead, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that Selgas owed taxes for the relevant years. For example, the jury saw IRS records showing unpaid tax liability.

14

No. 21-10651
c/w No. 21-10672

As to his 2005 tax liability, Selgas argues that he did not have a "tax deficiency" as a matter of law because the Government did not prove that the IRS followed "statutory provisions" related to the assessment of taxes. [5] The Government contends that Selgas's argument is "meritless." Similar to Selgas, the defendant in *United States v. Nolen* maintained that "a formal administrative tax assessment" was necessary to prove evasion of payment under § 7201. 472 F.3d 362, 378 (5th Cir. 2006). Our court, without need to settle the matter definitively because the case was resolved on other grounds, nonetheless concluded that "the weight of authority favors [the] view that an assessment is *not* required to prove attempted evasion of payment under § 7201." *Id.* at 379–80 (quoting *United States v. Farnsworth*, 456 F.3d 394, 403 (3d Cir. 2006)).

We agree with *Nolen* and are persuaded that the weight of authority establishes that a formal assessment is one piece of evidence that *may* prove the existence of a tax deficiency or a tax due and owing, but is not a requirement. *See Farnsworth*, 456 F.3d at 401–03 (collecting cases); *United States v. Silkman*, 156 F.3d 833, 837 (8th Cir. 1998) (rejecting "theory that proof of a valid assessment is essential" and explaining that "while an assessment *may* be used to prove a tax deficiency . . . an assessment is not a necessary element of a payment evasion charge"); *United States v. Daniel*, 956 F.2d 540, 542 (6th Cir. 1992) (rejecting argument that "in order to prosecute and convict under section 7201, the Internal Revenue Service must make an assessment of taxes owed and make a demand for payment" so long as existence of tax deficiency is proven); *United States v. Voorhies*, 658 F.2d

[5] The jury was instructed that "to prove that [Selgas] attempted to evade the payment of a tax, the Government does not need to prove that the IRS formally assessed, or determined, the amount of tax due and owing." On appeal, Selgas does not challenge that portion of the jury instructions.

15

710, 714 (9th Cir. 1981) (rejecting argument that "existence of a tax deficiency" for purposes of § 7201 requires a "final administrative determination of tax liability" and explaining that a "deficiency arises by operation of law" because tax is due and owed on date return must be filed regardless of availability of subsequent administrative procedures); *United States v. Hogan*, 861 F.2d 312, 315–16 (1st Cir. 1988) (holding that "no formal assessment was necessary" where a "tax due and owing" was established); *United States v. Dack*, 747 F.2d 1172, 1174–75 (7th Cir. 1984) (explaining that "tax assessment proceedings are civil in nature and are not normally a prerequisite to criminal liability" such that proof of "validly assessed tax" is only required "when the crime charged is one of evading the payment of taxes *that have been assessed in civil proceedings*" as a matter of fact (emphasis added)).

Selgas's argument to the contrary is premised on a misunderstanding of language in a Seventh Circuit case, *United States v. England*, that "there is no real distinction to be drawn between a 'tax due and owing' and a tax validly assessed." 347 F.2d 425, 430 & n.10 (7th Cir. 1965). The defendant in *England* had been convicted of evading the *assessment* of income taxes some years prior to being charged with evading the *payment* of those assessed taxes. *Id.* at 427–28. Based on the previous evasion-of-assessment conviction, the district court instructed the jury that the previous tax assessments were valid as a matter of law. *Id.* at 429–30. Equating "a tax validly assessed" with the "tax due and owing" element of tax evasion, the Seventh Circuit reversed because the existence of a tax due and owing is a matter of fact that must be found by a jury. *Id.* at 430 & n.10. Viewed in context, the language from *England* that Selgas relies on does not bear the weight that he places upon it because it refers to the particulars of that case, not a general rule to be applied in all tax evasion cases. The Seventh Circuit itself has stated as much,

16

subsequently holding in *United States v. Dack* that "*England* did not define a valid tax assessment as a necessary element of tax evasion in every case," but rather "stands only for the proposition that where, under a peculiar set of facts, a valid tax assessment is a necessary element, the court cannot instruct the jury to find that element as a matter of law." 747 F.2d at 1174.

In this case, the existence of a "tax deficiency" or a "tax due and owing" was properly given to the jury, and, regarding the 2005 tax year, we conclude that the evidence was sufficient for a reasonable jury to find that Selgas had tax due and owing.  Viewed in the light most favorable to the verdict, the evidence showed that Selgas received more than $1 million in income from MyMail in 2005; that he did not file a valid tax return and instead filed a Statement that misreported receipt of $178,640 in "lawful dollars" but denied that this was "income"; and that he did not pay the tax on his substantial unreported income.  This evidence was clearly sufficient for the jury to find the existence of a tax deficiency beyond a reasonable doubt.

Turning to the other elements, willfulness is "a voluntary, intentional violation of a known legal duty." *United States v. Kim*, 884 F.2d 189, 192 (5th Cir. 1989).  Evidence of willfulness "is ordinarily circumstantial, since direct proof is often unavailable." *Id.* (citation omitted).  "Circumstantial evidence in this context may consist of . . . 'any conduct, the likely effect of which would be to mislead or to conceal.'" *Id.* (quoting *Spies v. United States*, 317 U.S. 492, 499 (1943)) (internal citations omitted); *see also United States v. Herrera*, 559 F.3d 296, 300–02 (5th Cir. 2009) (holding that jury could infer willfulness from acts of concealment, including transferring money to another's bank account and putting property in another's name via quitclaim deed).  And an affirmative act of tax evasion can be "any conduct, the likely effect of which would be to mislead or to conceal," so long as "the tax-

17

evasion motive plays any part in such conduct." *Spies*, 317 U.S. at 499. "By way of illustration," such conduct includes, as relevant here, "concealment of assets or covering up sources of income, [and] handling of one's affairs to avoid making the records usual in transactions of the kind." *Id.*

Viewed in the light most favorable to the verdict, the evidence showed that Selgas failed to report a substantial amount of income; influenced MyMail to amend its tax return to underreport how much income it distributed to the Selgases; converted at least $1 million of income into gold coins; purchased a house with gold coins and transferred it to a trust controlled by a relative; and hid his income in Green's trust accounts and used the concealed funds to pay his living expenses for at least a decade, including during the years that IRS Agent Daniel was contacting Selgas and Green, as Selgas's IRS power-of-attorney, in an attempt to collect Selgas's unpaid tax liabilities. Based on the forgoing evidence, a reasonable jury could find beyond a reasonable doubt both willfulness and an affirmative act of evasion.

## E.

Next, both appellants assert that the district court plainly erred in not giving certain jury instructions. Both correctly concede that review is for plain error. *See United States v. Dupre*, 117 F.3d 810, 816 (5th Cir. 1997) ("[P]roposed [jury] instructions do not preserve error on appeal, absent an objection specific to the counts at issue."). Selgas submitted thirty jury instructions. However, at the charge conference neither Selgas nor Green requested any of the instructions be given or objected to their exclusion. On appeal, Selgas argues that the district court erred in failing to give submitted instructions 9–13, 26, and 28. Green argues the same regarding instructions 6, 10–13, and 26. All of appellants' challenges to the jury instructions fail.

"A jury instruction must: (1) correctly state the law, (2) clearly instruct the jurors, and (3) be factually supportable." *United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018) (citation omitted). "Trial judges have substantial latitude in tailoring their instructions if they fairly and adequately cover the issues presented in the case," and failure to give a requested instruction is error "only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense." *United States v. Masat*, 948 F.2d 923, 928 (5th Cir. 1991). "Error in a charge is plain only when, considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice." *United States v. McClatchy*, 249 F.3d 348, 357 (5th Cir. 2001) (internal quotation marks and citation omitted). "Jury instruction error 'does not amount to plain error unless it could have meant the difference between acquittal and conviction.'" *Fairley*, 880 F.3d at 208 (quoting *McClatchy*, 249 F.3d at 357).

To begin, we note that appellants' briefing includes many conclusory statements and fails to meaningfully address all four components of plain error review as to all challenged jury instructions. To the extent their arguments are not forfeited for inadequate briefing, however, Selgas and Green have failed to show plain error. Even if we were to assume that appellants' proposed instructions were correct statements of the law (which the Government contests), neither appellant has shown that failure to give the instructions constitutes an error that was clear or obvious, or that any error affected their substantial rights or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" such that we should exercise our discretion to remedy the error. *Puckett*, 556 U.S. at 135; *see also United States v. Stockman*, 947 F.3d 253, 260 (5th Cir. 2020) (explaining that "controlling authority on point" or "closely analogous precedent" is needed to show "clear or obvious" error).

No. 21-10651
c/w No. 21-10672

First, Selgas's and Green's briefing regarding instructions 9-13 and Green's briefing regarding instruction 26 wholly fail to address all four components of plain error, and are rejected without further comment. Next, Selgas's argument that the omission of instruction 26 (his proposed definition of a "*Beard* return"[6]) and instruction 28 (his proposed definition of a "tax deficiency") "blinded the jury to Selgas's defense" that he was "rel[ying] on the law and the IRS's legal duties" and "incapacitate[d] the jury from determining whether [he] had a good faith defense that he was complying with the law" also fails. Selgas has not shown that failure to give either instruction was clear or obvious error that affected his substantial rights. And, contrary to his argument, Selgas in fact presented his good faith defense to the jury, and the jury was properly instructed on the definition of "good faith," told that "good faith" was "a complete defense to the charges" because it was inconsistent with the mental state of willfulness, and told that it was the Government's burden to prove that defendants acted with the requisite mental state.

Finally, Green argues that failure to give instruction 6, which purported to define "What a Conspiracy to Defraud Is and Is Not," impaired his "*Haga* defense." The district court's instructions on the conspiracy

---

[6] Selgas argues that his 2005 Statement was a "*Beard* return" that self-assessed his tax liability. *See Beard v. Commissioner*, 82 T.C. 766, 777–79 (1984). "In *Beard v. Comm'r.*, the United States Tax Court also examined the question of when a document may be said to constitute a valid tax return for statute-of-limitations purposes. The *Beard* court held that, in order for a document to be considered a return, 'there must be sufficient data to calculate tax liability; . . . the document must purport to be a return; . . . there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and . . . the taxpayer must execute the return under penalties of perjury.'" *United States v. Davis*, 603 F.3d 303, 306–07 (5th Cir. 2010) (quoting *Beard*, 82 T.C. at 777) (internal citation omitted). Selgas's Statement was not a "reasonable attempt to satisfy the requirements of the tax law," and the IRS contested that it was executed under penalty of perjury.

count were based on the Fifth Circuit pattern jury instruction and correctly stated the law. *See United States v. Cessa*, 856 F.3d 370, 376 (5th Cir. 2017) (explaining that district court does not err in using pattern instruction which correctly states the law). Green cites no controlling authority requiring his preferred instruction to be given and therefore cannot show a clear or obvious error. *See Stockman*, 947 F.3d at 260. And he fails to explain how the absence of his proposed instruction prevented him from presenting his defense or otherwise affected his substantial rights, or why we should exercise our discretion under prong four. Green has not shown plain error.

## F.

Last, we consider Selgas's claim that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. This claim faces two hurdles on direct appeal. First, Selgas did not raise it until his motion to reconsider the district court's denial of his Rule 33 motion for a new trial. Claims of ineffective assistance are reviewed *de novo*. However, arguments raised for the first time in a motion for reconsideration are reviewed on direct appeal for plain error.[7] Second, we usually do not consider IAC claims on direct review: "This court will consider [IAC] claims on

---

[7] In his opening brief to this court, Selgas asserts that he is entitled to *de novo* review because his IAC claim was brought to the district court's attention "in his Rule 33 and Rule 29 motions." This is not so. As the district court correctly noted in its order denying Selgas's motion for reconsideration, and as our review of the record confirms, the IAC claim was not included in the initial Rule 29 or Rule 33 motions, but rather was first raised in the motion for reconsideration. In his reply brief, Selgas again misrepresents the record, asserting that his IAC claim was presented to the district court "twice," both in his motion for reconsideration and in his supporting brief. As the motion and brief were submitted to the district court at the same time and in conjunction with each other, it is misleading to claim that the issue was presented "twice." Such material misrepresentations are not appreciated, and we admonish counsel to act with the utmost candor in future appearances before this court or any court.

direct appeal only in 'rare cases' in which the record allows a reviewing court to 'fairly evaluate the merits of the claim.'" *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (quoting *United States v. Partida*, 385 F.3d 548, 568 (5th Cir. 2004)).  Typically, "a § 2255 motion is the preferred method for raising a claim of ineffective assistance of counsel." *United States v. Gordon*, 346 F.3d 135, 136 (5th Cir. 2003) (citing *Massaro v. United States*, 538 U.S. 500 (2003)).  We cannot consider Selgas's IAC claim on direct appeal because the record does not fairly allow for an evaluation of the merits, and thus deny it without prejudice to Selgas raising his claim on collateral review. *See United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014).

## IV.

For the forgoing reasons, Selgas's and Green's convictions and sentences are AFFIRMED.